# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAURA E. FOOSE,** | : | **Civil No. 3:17-CV-00099** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY A. BERRYHILL**[1] | : | |
| **Acting Commissioner** | : | |
| **of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction and Litigation History

In the matter of Laura E. Foose ("Foose"), this Court is called upon for a second time to review an Administrative Law Judge's evaluation of Foose's disability application. On November 22, 2011, Foose protectively filed for Supplemental Security Income under Title XVI with July 1, 2004 listed as her onset date of disability. (Tr. 16.) This claim was denied on February 8, 2012, and resulted in a request for an administrative law hearing. (Tr. 16.) On April 25, 2013, Foose appeared and testified at an ALJ hearing in Harrisburg, PA. (Tr. 16.)  At this hearing, Foose amended her onset date of disability to March 17, 2009. (Tr. 16.)

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Acting Commissioner, Nancy A. Berryhill, is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

The ALJ issued a decision dated May 16, 2013, finding that Foose is not disabled within the meaning of the Social Security Act. (Tr. 25.) This decision was appealed to the U.S. District Court of the Middle District of Pennsylvania because the Social Security Administration's Appeals Council denied Foose's request for review of the ALJ's May 16, 2013 decision. (Tr. 723.)

At the request of the Commissioner, the Court ordered that Foose's case be remanded to the ALJ for further proceedings aimed at evaluating the medical, psychological evidence in this case. (Tr. 734-735.) A second hearing was then held on October 27, 2015, at which Foose also appeared and testified. (Tr. 653.) Subsequently, the ALJ issued another decision on December 7, 2015, finding once again that Foose was not disabled within the meaning of the Social Security Act. (Tr. 671.) In reaching this conclusion, the ALJ conceded that Foose suffered from a cascading array of mental health impairments, including: (1) depression; (2) generalized anxiety disorder; (3) obsessive compulsive disorder; (4) panic disorder with agoraphobia; (5) bipolar disorder; (6) ADHD; (7) PTSD; (8) history of oppositional defiant disorder; (9) history of adjustment disorder with mixed anxiety and depressed mood; and (10) substance abuse disorder. (Tr. 656.) The ALJ nonetheless concluded that Foose retained the residual functional capacity to perform some work. In reaching this conclusion, the ALJ relied upon the most temporally remote medical opinion in the record, a November 2010 opinion from a

non-treating, non-examining source who evaluated medical records spanning from 2004 through 2010. The ALJ discounted much more contemporaneous treatment records and opinions from as many as five treating sources, all of whom found that Foose was profoundly impaired and unable to work due to her emotional impairments. The ALJ also neglected to mention the only contemporaneous treating source assessment which may have provided some small measure of support for the temporally remote, non-treating opinion which was relied upon in this case to deny Foose's disability benefit application.

Dissatisfied with the ALJ's decision, Foose submitted a request for review to the Appeals Council which denied review of the December 7, 2015 ALJ decision. (Tr. 635-640.) As a result of this denial, the current appeal was filed by Foose on January 17, 2017. (Doc. 1.) Both parties have briefed this case, and it is ripe for resolution. For the reasons set forth below, we conclude that the ALJ's decision to give significant weight to this temporally and topically remote, non-examining source opinion, which could not take into account a host of intervening medical events, is not sufficiently supported by, or explained on the record before us. Therefore, we will direct that this case be remanded to the Commissioner for further development of the medical record through a consulting examination, or a comprehensive and timely state agency physician assessment of the entirety of Foose's medical records.

## II.    **Factual Background**

Foose is a plaintiff with various mental health disorders and a history of drug abuse who only completed the eleventh grade and who has no past relevant work experience. (Tr. 585.) When Foose filed for disability in 2011, she reported depression, anxiety, obsessive compulsive disorder, and drug addiction as impairments that limited her ability to work. (Tr. 192.) The ALJ later determined that she suffered from the following severe emotional impairments: (1) depression; (2) generalized anxiety disorder; (3) obsessive compulsive disorder; (4) panic disorder with agoraphobia; (5) bipolar disorder; (6) ADHD; (7) PTSD; (8) history of oppositional defiant disorder; (9) history of adjustment disorder with mixed anxiety and depressed mood; and (10) substance abuse disorder. (Tr. 656.)    Ms. Foose has one daughter, and in August 2015, treating psychiatrist Dr. Edward Coronado ("Dr. Coronado") reported in his treatment notes that she was pregnant. (Tr. 839.) It was reported by Foose's sister, Amy Ebersole ("Ms. Ebersole"), that Ms. Ebersole and her husband actually have legal guardianship of Foose's daughter because of Foose's inadequate parenting. (Tr. 586.) Besides helping care for Foose's child, Ms. Ebersole also manages her sister's finances, pays her bills, organizes meals, does her grocery shopping, and makes sure that Foose and her daughter get to various appointments.

Since 2011, during the more recent years of Foose's on-going struggle with her mental health, various healthcare providers have opined about her mental capabilities and have frequently found her to be disabled. Specifically, on March 30, 2011, treating psychological doctor, Dr. Ajith Potluri ("Dr. Potluri") completed a medical source statement reporting that in the past year Foose's highest Global Assessment of Functioning ("GAF") score [2] was 50, but her current GAF score was 55.[3] (Tr. 546.) In this same statement, Dr. Potluri also noted that Foose was unable to meet competitive standards for mental abilities and aptitudes needed for

---

[2] "A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. See Diagnostic and Statistical Manual of Mental Disorders, 32–34(4th ed. text rev. 2000) (hereinafter 'DSM–IV'). A score is placed in a particular decile if either symptom severity or the level of functioning falls with that range. Id." Markoch v. Colvin, No. 3:14-CV-00780, 2015 WL 2374260, at *10 (M.D. Pa. May 18, 2015).

[3] "GAF scores in the 51–60 range indicate moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29 Fed.Appx. 898, 900 (3d Cir. 2002). DaVinci v. Astrue, 1:11-CV-1470, 2012 WL 6137324 (M.D. Pa. Sept. 21, 2012) report and recommendation adopted, Davinci v. Astrue, 1:11-CV-1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012). "A GAF score of 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' DSM–IV at 34. A score of 50 is on the borderline between serious and moderate symptoms." Colon v. Barnhart, 424 F.Supp.2d 805, 809 (E.D. Pa. 2006). See Shufelt v. Colvin, No. 1:15-CV-1026, 2016 WL 8613936, at *2 (M.D. Pa. Sept. 15, 2016), report and recommendation adopted sub nom. Shulfelt v. Colvin, No. 1:15-CV-1026, 2017 WL 1162767 (M.D. Pa. Mar. 29, 2017)." Jones v. Colvin, No. 1:16-CV-1535, 2017 WL 4277289, at *2 (M.D. Pa. Sept. 25, 2017), report and recommendation adopted sub nom. Jones v. Berryhill, No. 1:16-CV-1535, 2017 WL 4314572 (M.D. Pa. Sept. 27, 2017).

unskilled work, including areas of concentration, work attendance, decision making, interacting with others, and appropriate response to work routine. (Tr. 548.) Shortly after Dr. Potluri's statements, one of Foose's former treating therapists, Kevin Harney, LPC ("Mr. Harney"), found that as of November 2011 Foose's GAF score was 45. (Tr. 587.) He also reported that he was "struck by how much she had declined intellectually" between the first time he had met with Laura in 2006 and the second time he met with her on October 18, 2011. (Tr. 585-586.)

Dr. Harvey Shapiro ("Dr. Shapiro"), the psychiatrist who treated Foose from September 20, 2011 to at least October 7, 2014 (Doc. 12 p. 11), also rated Foose with a GAF score of 45 on May 1, 2013. (Tr. 623.) In this same medical report, Dr. Shapiro noted that Foose had a number of extreme limitations relating to her mental abilities and aptitude to do unskilled work concerning concentration, interruption from her symptoms, appropriate social behavior, and independence. (Tr. 619-621.) Another therapist, Dinen Sanders, M.S. ("Mr. Sanders"), who treated Foose from April 8, 2014 until September 24, 2015, provided a narrative report on October 26, 2015 stating that Foose was "regressing more than progressing" and that for Foose "to become even part time employed would be almost impossible" due to her various mental health disorders for which Mr. Sanders was treating her. (Tr. 875.)

Ms. Foose also submitted her social security case to the Medical Review Team of the Pennsylvania Department of Human Services. (Tr. 903.) Dr. Ronald Refice ("Dr. Refice") reviewed her medical records up through October 9, 2015 and found on December 16, 2015, that Foose's condition met the requirements for listings 12.04 and 12.06 because she has marked difficulties in social functioning, concentration, persistence, and pace, and has had repeated episodes of decompensation (each of extended duration). (Tr. 904; 906.) The Medical Review Team further concluded that Foose "retains no functional capacity." (Tr. 905.)[4]

It is against the backdrop of this medical history, that the ALJ denied Foose's disability claim in December of 2015. Although the ALJ concluded that Foose is not disabled, the ALJ also found that she suffered from the following severe impairments: (1) depression; (2) generalized anxiety disorder; (3) obsessive compulsive disorder; (4) panic disorder with agoraphobia; (5) bipolar disorder; (6) ADHD; (7) PTSD; (8) history of oppositional defiant disorder; (9) history of adjustment disorder with mixed anxiety and depressed mood; and (10) substance abuse disorder. (Tr. 656.) However, despite this array of severe impairments, the

---

[4] The only countervailing contemporaneous medical opinion evidence in the record was provided by Dr. Coronado, the psychiatrist who treated Foose from November 1, 2014 to December 4, 2015, after Dr. Shapiro left his practice, who found that Foose had a GAF score of 65 on October 9, 2015. (Tr. 893.) Curiously, the ALJ made no reference to this report in the decision denying disability benefits to Foose.

ALJ found that Foose "has the residual functional capacity to perform a full range of work at all exertional levels." (Tr. 661.) The ALJ then limited Foose's work to only "simple, routine, repetitive tasks in a work environment free from fast paced production involving only simple work related decisions with few, if any, work place changes, no interaction with the public, occasional interaction with co-workers but no tandem tasks, and occasional supervision." (Tr. 661.)

The ALJ reached this result despite the treating mental healthcare provider opinions from 2011 through 2015 which consistently found that Foose was severely impaired. (Tr. 671.) In drawing this conclusion, the ALJ gave these multiple treating source opinions little weight. Instead, the ALJ conferred significant weight to reviewing State agency psychological consultant Dr. Kerry Brace's ("Dr. Brace") November 2010 mental RFC assessment and psychiatric review technique evaluation. (Tr. 667.) Thus, the ALJ's decision appeared to give the greatest weight to the most temporally remote medical opinion, an opinion which could not have considered the subsequent clinical findings of five other healthcare professionals who found both that Foose's condition had deteriorated over time and was now disabling. Moreover, that medical opinion which was given the greatest weight by the ALJ came from the least informed medical source, a non-treating, non-examining source who had no access to medical records pertaining to Foose since 2010, five years prior to the ALJ's decision.

On appeal, Foose asserts three objections to this decision. First, she argues that the ALJ erred by assigning significant weight to State agency consultant, Dr. Brace's opinion from November 2010. (Doc. 12 p. 22.) Second, Foose contends that the Pennsylvania Department of Human Services Medical Review Team report was relevant evidence that could have changed the outcome of the ALJ decision; thus, it should be reviewed on remand. (Doc. 12 p. 27-28.) Foose's final argument is that the ALJ erred in his assessment of the paragraph B criteria when determining if Foose met a listing at Step Three. (Doc. 12 p. 29.)

The parties have fully briefed these issues, and this case is ripe for resolution. For the reasons set forth below, we find that this case should be remanded to fully consider all of the intervening medical evidence which has been amassed since the state agency consultant opined on Foose's mental health in November of 2010. Therefore, we will order this case remanded to the ALJ for further proceedings.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of the Administrative Law Judge and the Court</u>

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine

whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that he experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ

adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in a factual setting where a factually-supported and well-reasoned medical source opinion regarding limitations that would support a disability claim is rejected by an ALJ based upon a lay assessment of other evidence by the ALJ. In contrast, when an ALJ fashions an RFC determination on a sparse factual record or in the absence of any competent medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not

be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final

decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this court, therefore, is not whether a plaintiff is disabled, but

whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." <u>Frazier v. Apfel</u>, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000) (quoting <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997)); <u>see also</u> <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

B. **<u>Legal Benchmarks for the ALJ's Assessment of Medical Treatment and Opinion Evidence</u>**

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R.

§404.1527(a)(2) (effective Aug. 24, 2012, through Mar. 26, 2017).[5] Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally are entitled to more weight. See 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (effective June 13, 2011, through Mar. 26, 2017) (defining "treating source"). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic

---

[5] Some of the applicable regulations been revised since the ALJ issued her decision in this case. For instance, definition of "medical opinions," contained in 20 C.F.R. § 404.1527(a)(2) of the prior regulation is now designated as § (a)(1) in the revised regulation. Throughout this opinion, the court cites to the version of the regulations in effect at the time the ALJ rendered her decision. Although the revised regulations may be worded slightly differently, the changes have no effect on the outcome of this case.

techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, state agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. At the ALJ and Appeals Council levels of the administrative review process, however, findings by nonexamining state agency medical and psychological consultants should be evaluated as medical opinion evidence. 20 C.F.R. §404.1527(e) (effective Aug. 24, 2012, through Mar. 26, 2017). As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions.

SSR 96-5p, 1996 WL 374183 at *6. Opinions by state agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinions and treating records of various medical sources. As to these medical opinions and records: "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec.,

667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

However, case law also cautions courts to take into account the fact that state agency non-treating and non-examining source opinions are often issued at an early stage of the administrative process. While this fact, standing alone, does not preclude consideration of the agency doctor's opinion, see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), it introduces another level of caution that should be applied when evaluating reliance upon such opinions to discount treating and examining source medical statements. Therefore, where a state agency non-treating and non-examining opinion does not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016).

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

## C.  The ALJ's Assignment of Weight to the State Agency Reviewing Psychologist is Not Supported by Substantial Evidence.

Foose asserts that the ALJ erred in formulating this RFC assessment because he erroneously accorded significant weight to State agency psychological consultant Dr. Brace's mental RFC assessment and review technique from November 2010. (Doc. 12 p. 22.) Specifically, Foose argues that this opinion cannot constitute as substantial evidence upon which the ALJ can base his decision because it predates the relevant time period established by the ALJ in his decision, November 22, 2011,[6] and because subsequent, material, intervening medical developments cast grave doubt upon the weight that can be afforded to this temporally remote, non-examining source opinion.

As enumerated above, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433. This cardinal principle applies with particular force to ALJ

---

[6] We note that the Commissioner argues that Dr. Brace's opinion is within the relevant period because Foose alleged that her onset date of disability was March 17, 2009, and Dr. Brace's opinion considered her medical history from 2004 to 2010. (Doc. 14 p. 14.) We need not resolve this dispute because even if we assume that the Commissioner is correct, the Court still concludes that it was error to assign significant weight to Dr. Brace's 2010 opinion because Dr. Brace did not have the benefit of the subsequent five years of treating physician and mental healthcare provider opinions assessing Foose, opinions which indicated that as many as five medical sources found Foose to be disabled.

assessments of medical opinion evidence, as it is well-settled that "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)).

Guided by these legal tenets, we find in this case that the ALJ's decision to afford significant weight to a temporally remote, non-treating, non-examining state agency opinion, while discounting numerous contemporaneous treating source opinions, has not been adequately justified or supported on the record of these proceedings. Therefore, a remand of this case is necessary to further explain, or develop, this medical record.

On the unique facts of this case, the ALJ's reliance upon the November 2010 state agency doctor's opinion is particularly problematic on several scores. First, this judgment ran contrary to the general preferences articulated by regulations and case law that call upon ALJs to give significant weight to treating and examining source opinions, and to only favor an opinion rendered by a non-examining state agency physician when that opinion draws greater evidentiary support from the medical record.

Second, the decision to afford significant weight to this 2010 state agency opinion was particularly problematic when the ALJ rejected multiple, more recent and contemporaneous treating source opinions which found that Foose was wholly disabled. In the instant case, the state agency consultant's November 2010 opinion, which pre-dated years of care and treatment provided to Foose by multiple different treating sources, cannot be relied upon to carry the Commissioner's burden in this case for several reasons. As we have observed, where a non-treating and non-examining opinion does not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016). As a matter of law and common sense, material medical developments which take place after a state agency expert's review of a claimant's file frequently can undermine the confidence which can be placed in this non-treating and non-examining source opinion. Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003). In short, it is well-recognized that:

> It can be inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, particularly if a claimant's medical condition changes significantly after the opinion is issued. See, e.g., Alley v. Astrue, 862 F.Supp.2d 352, 366 (D.Del.2012); Morris v. Astrue, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012). However, when

a state agency physician renders an RFC assessment prior to a hearing, the ALJ may rely on the RFC if it is supported by the record as a whole, including evidence that accrued after the assessment. See, e.g., Pollace v. Astrue, Civil Action No. 06–05156, 2008 WL 370590, at *6 (E.D.Pa. Feb. 6, 2008); see also Johnson v. Comm'r of Soc. Sec., Civil No. 11–1268 (JRT/SER), 2012 WL 4328389, at *9 n. 13 (D.Minn. Sept. 20, 2012); Tyree v. Astrue, No. 3:09–1091, 2010 WL 2650315, at *4 (M.D.Tenn. June 28, 2010).

Smith v. Astrue, 961 F. Supp. 2d 620, 644 (D. Del. 2013).

Here, this November 2010 non-treating and non-examining source opinion stands in stark contrast to numerous subsequent treating source evaluations and opinions. Moreover, when the state agency consultant issued this opinion in 2010, he did not have the benefit of five years of subsequent clinical evidence which found Foose to be severely impaired. Recognizing that "[i]t can be inappropriate for an ALJ to rely on a medical opinion that was issued prior to the close of the period of claimed disability, particularly if a claimant's medical condition changes significantly after the opinion is issued, See, e.g., Alley v. Astrue, 862 F.Supp.2d 352, 366 (D.Del.2012); Morris v. Astrue, Civ. Action No. 10–414–LPS–CJB, 2012 WL 769479, at *24 (Mar. 9, 2012)," Smith v. Astrue, 961 F. Supp. 2d 620, 644 (D. Del. 2013), we find that these material intervening medical developments undermine any reliance that can be placed on this November 2010 opinion and call for further consideration of the evidence relating to Foose's mental health.

Finally, the rationale for the ALJ's decision to afford this temporally remote opinion significant weight—the ALJ's conclusion that this 2010 opinion was consistent with the longitudinal medical records from 2010 through 2015—was not fully supported by the medical record, which contains substantial evidence documenting on-going and significant mental health impairments experienced by Foose. In particular, it is difficult to see how the 2010 state agency opinion can be seen as consistent with the longitudinal medical record from 2011 through 2015, when that longitudinal record is replete with treating source opinions from multiple healthcare providers who opined that Foose has regressed severely and is now disabled. This longitudinal record, taken as a whole, seems to contradict the state agency doctor's conclusions. Therefore, it may not be relied upon to confirm those findings without some further analysis of the entirety of Foose's medical history.

## IV.   <u>Conclusion</u>

Taking all of these considerations into account, we conclude that the ALJ's decision to give significant weight to this temporally and topically remote, non-examining source opinion, which could not take into account a host of intervening medical events, is not sufficiently supported by, or explained on the record before us. Therefore, we will direct that this case be remanded to the Commissioner for further development of the medical record through a consulting examination, or a comprehensive and timely state agency physician assessment of the entirety of

Foose's medical records, including the treating source opinions issued after the initial 2010 state agency review.

Yet, while case law calls for a remand and additional proceedings by the ALJ in this case to further assess this medical evidence, nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

An appropriate order follows.

So ordered this 2nd day of March, 2018.

 *s/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge